**PERKINS COIE LLP**

Heather M. Sager, Bar No. 186566
HSager@perkinscoie.com
Matthew L. Goldberg, Bar No. 267295
MGoldberg@perkinscoie.com
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone:   +1.415.344.7000
Facsimile:    +1.415.344.7050

Jacob Dean, Bar No. 301640
JacobDean@perkinscoie.com
1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Attorneys for Plaintiffs
VAGARO, INC. and 77 WEST & CO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAGARO, INC., a California corporation; 77 West & Co LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>ANNIE MILLER, an individual, GREGORY MILLER, and individual, and DOES 1-10<br><br>Defendants. | Case No.<br><br>**COMPLAINT AGAINST ANNIE MILLER AND GREGORY MILLER FOR:**<br><br>**1. FRAUD; AND**<br><br>**2. BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

162200485.1

Plaintiff Vagaro, Inc. ("**Vagaro**") and Plaintiff 77 West & Co LLC ("**77 West**") (collectively, "**Plaintiffs**") hereby allege as follows:

## I. INTRODUCTION

1. This Complaint arises out of Defendant Annie Miller's ("**Defendant**" or "**Ms. Miller**") pattern and practice of engaging in dishonest and fraudulent conduct directed at 77 West and Vagaro.

2. In or around March 2021, Ms. Miller sold certain salons and related property to 77 West. As part of this transaction, 77 West's affiliate, Vagaro, agreed to hire Ms. Miller to continue managing the salons. During the negotiations for these salons, Ms. Miller and her husband, Gregory Miller ("**Mr. Miller**"), provided fraudulent financial documents that showed one of the salons having a six-figure net profit when, in fact, the salon was not profitable at all. 77 West and Vagaro did not know the financial information provided by the Millers was fraudulent and relied on this financial information to close the transaction.

3. Shortly thereafter, Ms. Miller started working for Vagaro. During her employment, Vagaro learned that Ms. Miller fraudulently used John Zukoski's, Vagaro's Vice President of Finance, signature without his or Vagaro's consent to forge a document. When Vagaro learned of this malfeasance, Vagaro naturally terminated Ms. Miller for violating Vagaro's written policies prohibiting employees from providing knowingly inaccurate, incomplete, or misleading information. Ms. Miller subsequently filed a baseless lawsuit in the Superior Court of California, County of Contra Costa (the "**State Court Action**").

4. During discovery in the State Court Action, Vagaro and 77 West shockingly learned that the aforementioned financial information provided by the Millers was false, and the Millers' provided this information to induce (i) 77 West into purchasing a salon that was not profitable and (ii) Vagaro into hiring Ms. Miller.

5. 77 West and Vagaro now, through this Complaint, seek to recover its damages, attorneys' fees, and costs resulting from its reliance on the Millers' fraudulent misrepresentations when negotiating the purchase of certain salons.

162200485.1

## II.   PARTIES, JURISDICTION, AND VENUE

6.   Vagaro is a corporation organized and existing under the laws of the State of California with its principal place of business located in California. Vagaro is licensed and qualified to conduct business in the State of California.

7.   77 West is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located in California. 77 West is licensed and qualified to conduct business in the State of California.

8.   Ms. Miller is an individual currently residing in Brentwood, Tennessee. At all material times alleged in this Complaint, Ms. Miller was a resident in the Town of Danville, State of California, Contra Costa County, and/or was employed Vagaro, working in the Town of Danville, California, as well as Pleasanton, California.

9.   Mr. Miller is Ms. Miller's husband and currently resides in Brentwood, Tennessee with Ms. Miller (Ms. Miller and Mr. Miller are collectively referred to as the "**Millers**"). At all material times alleged in this Complaint, Mr. Miller was a resident in the Town of Danville, State of California, Contra Costa County.

10.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy is greater than $75,000 and complete diversity of citizenship exists between Plaintiffs and the Millers.

11.   Venue is proper in this forum pursuant to 28 U.S.C. § 1391(b)(2) as a substantial portion of the events giving rise to this Complaint occurred in this district. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(3) as the Millers are subject to this Court's personal jurisdiction.

## III.   DEFENDANTS

12.   Plaintiffs are unaware of the true names and/or capacities of the persons sued as Does 1-10, inclusive, and therefore sues them as such Does (collectively referred to as "**Defendants**"). Plaintiffs are informed and believe and thereupon allege that, at all relevant times hereto, each of the fictitiously named Doe Defendants was and continues to be responsible for the damages sustained by Plaintiffs. Plaintiffs will amend this Complaint to set forth the true names, capacities and/or entities of such Doe Defendants when they are ascertained.

162200485.1

## IV.     FACTUAL ALLEGATIONS

**A.     The Asset Purchase Agreement and the Millers' Misrepresentations.**

13.     In or around March 2021, Ms. Miller and her company—West & Co., Inc.—entered into an asset purchase agreement with 77 West (the "**Asset Purchase Agreement**" or "**APA**").

14.     Under the APA, 77 West agreed to purchase three salons from Ms. Miller and her company for more than $500,000.00, which included (i) Salon 77 West (Pleasanton) (the "**Pleasanton Salon**"), (ii) Salon 77 West (Danville) (the "**Danville Salon**"), and (iii) The Extension and Blowout Bar (collectively, the "**Purchased Assets**").

15.     Ms. Miller and 77 West also agreed as part of the APA that 77 West's affiliate, Vagaro, would hire Ms. Miller pursuant to an offer letter (the "**Offer Letter**") attached as Exhibit C to the APA after the parties finalized the APA.  *See* APA § 2(b)(ii).

16.     The Millers represented and warranted to Plaintiffs during the negotiations of the APA and the Offer Letter that certain tangible personal property included in the Purchased Assets were in good condition and adequate for the uses to which they were being put.  *See* APA § 3.04. Stated differently, the Millers represented and warranted that the property did not need maintenance or repairs except for ordinary, routine maintenance and repairs that were not material in nature or cost.

17.     The Millers also represented and warranted to Complainants during the negotiations of the APA and the Offer Letter that no representation, warranty, or statement contained in the Disclosure Schedules to the APA, or any certificate or other document furnished therein, contained any untrue statement of a material fact, omitted material facts, or misleading. *See* APA § 3.13.  In other words, the Millers represented and warranted that the financial disclosures (the "**Disclosure Schedules**") showing the income, expenses, and profits for the Purchased Assets were true and accurate.

18.     The Disclosure Schedules required Ms. Miller to disclose "all customer accounts and sales pipeline" and "all books and records" related to the operation of the Purchased Assets. *See* Disclosure Schedule § 1.01.

19. The Disclosure Schedule also required Ms. Miller to disclose "all fixed assets, equipment, hardware, fixtures, inventory, furnishings, and other tangible personal property related to and used in connection with the business." *Id.*

20. Ms. Miller elicited the help of her husband, Mr. Miller, in preparing the Disclosure Schedule.

21. On or around February 2021, the Millers collectively created a spreadsheet titled "West Co Projections" (the "**Fraudulent Spreadsheet**").

22. The Millers represented and warranted in the Fraudulent Spreadsheet that the Danville Salon had $144,200.00 in total yearly profit when the Danville Salon, unbeknownst to Plaintiffs, was in fact not profitable.

23. In preparing the projections for the Danville Salon, the Millers decided not to use the financial data from the Danville Salon; instead, the Millers purposefully used the profit numbers from the *Pleasanton* salon. In other words, the Millers' omitted key financial data regarding the Danville Salon and fraudulently misrepresented to Plaintiffs that the Danville Salon had $144,200.00 in total yearly profit when it was not profitable at all.[1]

24. The Millers knew when they created the Fraudulent Spreadsheet that they were using the wrong profit numbers for the Danville Salon.

25. The Millers used the wrong profit numbers for the Danville Salon to induce 77 West to enter into the APA and induce Vagaro to hire Ms. Miller.

26. Plaintiffs relied on the Millers' fraudulent misrepresentations when entering into the APA and hiring Ms. Miller.

27. 77 West would not have purchased the Purchased Assets and Vagaro would not have hired Ms. Miller but for the Millers' aforementioned fraudulent misrepresentations and warranties.

28. As a result of the Millers' aforementioned fraudulent misrepresentations and

---

[1] The Millers also made several misrepresentations regarding other tangible property that was part of the APA. For example, the Millers created a fixed asset record, which valued certain shampoo bowls at $12,000 or $700 per unit, despite knowing that these shampoo bowls were dysfunctional at that time.

warranties, Plaintiffs have incurred in excess of $500,000.00 in damages.

**B.    Plaintiffs' Demand for Indemnification.**

29.    Ms. Miller agreed under the APA to "defend, indemnify and hold harmless" 77 West and its affiliates, which specifically includes Vagaro, "from and against all claims, judgments, damages, liabilities, settlements, losses, costs and expenses, including attorneys' fees . . . relating to: any inaccuracy in or breach of any of the representations or warranties . . . contained in the [APA] or any document to be delivered" with the APA. *See* APA §§ 2.02(b)(ii), 7.02.

30.    On April 25, 2023, Plaintiffs' counsel sent a written Notice of Request for Indemnification (the "**Indemnification Notice**") to Ms. Miller demanding that Ms. Miller immediately indemnify Plaintiffs from all damages suffered because of the Millers' aforementioned misrepresentations. A true and correct copy of the Indemnification Notice is attached hereto as **Exhibit A**.

31.    As of the date of this Complaint, Ms. Miller has failed to indemnify or hold harmless Plaintiffs.

## FIRST CAUSE OF ACTION

### Fraud

### Plaintiffs Against Annie Miller and Greg Miller

32.    Plaintiffs reallege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

33.    On or around February 2021, the Millers collectively created and sent Plaintiffs the Fraudulent Spreadsheet.

34.    The Millers represented and warranted in the Fraudulent Spreadsheet that the Danville Salon had $144,200.00 in total yearly profit when the Danville Salon, unbeknownst to Plaintiffs, was in fact not profitable.

35.    In preparing the projections for the Danville Salon, the Millers decided not to use the financial data from the Danville Salon; instead, the Millers purposefully used the profit numbers from the *Pleasanton* salon, which led Complainants to believe that the Danville Salon

162200485.1

was profitable when it was not.

36. The Millers knew when they created the Fraudulent Spreadsheet that they were using the wrong profit numbers for the Danville Salon.

37. The Millers used the wrong profit numbers for the Danville Salon to induce 77 West to enter into the APA and induce Vagaro to hire Ms. Miller.

38. Complainants relied on the Millers' fraudulent misrepresentations when entering into the APA and hiring Ms. Miller.

39. 77 West would not have purchased the Purchased Assets and Vagaro would not have hired Ms. Miller but for the Millers' aforementioned fraudulent misrepresentations and warranties.

40. As a direct and proximate result of Mr. Miller's and Ms. Miller's aforementioned conduct, Plaintiffs have suffered damages in an amount to be determined at trial, but in excess of $500,000.00.

41. Ms. Miller acted with malice, oppression, and an intent to cause injury to Plaintiffs by fraudulently misrepresenting the profits for the Danville Salon and tricking 77 West into paying Ms. Miller over $500,000 for the Danville Salon that was losing money and tricking Vagaro into hiring Ms. Miller after the parties executed the APA.

42. Mr. Miller acted with malice, oppression, and an intent to cause injury to Plaintiffs by fraudulently misrepresenting the profits for the Danville Salon and tricking 77 West into paying Ms. Miller over $500,000 for the Danville Salon that was losing money and tricking Vagaro into hiring Ms. Miller after the parties executed the APA.

43. All condition precedents to recovery of the relief sought in this cause of action have occurred, been met, or were waived.

/ / /

/ / /

/ / /

/ / /

162200485.1

## SECOND CAUSE OF ACTION

### Breach of Contract

### 77 West Against Annie Miller and Doe Defendants 1–10.

44. Plaintiffs reallege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

45. In or around March 2021, Ms. Miller and her company—West & Co., Inc.—entered into the APA.

46. 77 West performed all obligations required on its part to be performed under the APA except to the extent that such performance was rendered superfluous, prevented or excused by operation of law, by impossibility, by impracticality, by frustration of purpose, by the acts or omissions of Ms. Miller, Doe Defendants or others for whom Ms. Miller and Doe Defendants are responsible, or except where Ms. Miller and Doe Defendant are estopped to rely upon, or have waived, any failure to perform such things and conditions by Ms. Miller's and Doe Defendants' own acts or omissions.

47. Ms. Miller breached the APA by failing to indemnify 77 West for losses sustained by 77 West resulting from the false financial information the Millers' provided while negotiating the APA.

48. As a direct and proximate result of Mr. Miller's and Ms. Miller's aforementioned conduct, Plaintiffs have suffered damages in an amount to be determined at trial, but in excess of $500,000.00.

49. All condition precedents to recovery of the relief sought in this cause of action have occurred, been met, or were waived.

### V.     DEMAND FOR JURY TRIAL

50. Pursuant to Fed. R. Civ. P. 38(b) , Plaintiffs hereby demand a trial by jury of all claims asserted in this complaint so triable.

### VI.     PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Mr. Miller and Ms. Miller as follows:

a.  For damages in an amount to be determined at trial, but in excess of $500,000.00;

162200485.1

| | | |
|---|---|---|
| 1 | b. | For punitive damages; |
| 2 | c. | For pre-judgment and post-judgment interest, as allowed by law; |
| 3 | d. | For equitable relief as permitted by law and equity; |
| 4 | e. | For reasonable attorneys' fees and costs; |
| 5 | f. | For costs of suit herein incurred; and |
| 6 | g. | For such other and further relief as the court may deem proper. |

DATED:  May 25, 2023          **PERKINS COIE LLP**

By:/s/Jacob Dean
    Heather M. Sager
    Matthew L. Goldberg
    Jacob Dean

Attorneys for Plaintiffs
VAGARO, INC. and 77 WEST & CO LLC

162200485.1