UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAGARO, INC., et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>ANNIE MILLER, et al.,<br><br>  Defendants. | Case No. 23-cv-02591-TSH<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 9 |

## I.   INTRODUCTION

Pending before the Court is Defendants Annie and Gregory Miller's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 9. Plaintiffs Vagaro, Inc. and 77 West & Co LLC filed an Opposition (ECF No. 16), and Defendants filed a Reply (ECF No. 19). The Court finds this matter suitable for disposition without oral argument and **VACATES** the August 3, 2023 hearing. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **DENIES** the motion.[1]

## II.   BACKGROUND

**A.   Plaintiffs' Complaint Allegations**

Vagaro, Inc. ("Vagaro") and 77 West & Co LLC ("77 West") are California-based corporations. ECF No. 1 ¶¶ 6, 7. Annie Miller and Gregory Miller (the "Millers") are married and currently reside in Brentwood, Tennessee. *Id.* ¶¶ 8, 9.

In or around March 2021, Annie Miller and her company, West & Co., Inc., entered into an asset purchase agreement ("APA") with 77 West. *Id.* ¶ 13.

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 8, 11.

1  Under the APA, 77 West agreed to purchase from Ms. Miller and her company three
2  salons. *Id.* ¶ 14.
3  Ms. Miller and 77 West agreed as part of the APA that 77 West's affiliate Vagaro would
4  hire Ms. Miller pursuant to an offer letter (the "Offer Letter"). *Id.* ¶ 15.
5  During the negotiations, the Millers represented and warranted to Plaintiffs during
6  negotiations of the APA and Offer Letter that certain tangible personal property included in the
7  purchased asserts was in good condition and adequate for the uses needed. *Id.* ¶ 16.
8  The Millers also represented and warranted to Plaintiffs during negotiations of the APA
9  and Offer Letter that financial disclosures showing income, expenses, and profits for the salons
10 were true and accurate. *Id.* ¶ 17.
11 As part of the financial disclosures, the Millers represented and warranted that the salon in
12 Danville ("Danville Salon") had $144,200.00 in total yearly profit. *Id.* ¶ 22. In fact, the Danville
13 Salon was not profitable. *Id.*
14 The Millers knew they were using the wrong profit numbers for the Danville Salon and
15 used the erroneous profit numbers to induce 77 West to enter into the APA and to induce Vagaro
16 to hire Miller. *Id.* ¶¶ 24, 25.
17 Plaintiffs relied on the Millers' misrepresentations in entering into the APA and hiring Ms.
18 Miller. 77 West would not have entered into the APA, and Vagaro would not have hired Ms.
19 Miller but for these misrepresentations. *Id.* ¶¶ 26, 27.

20 **B.  State Court Litigation**

21 Some time after the negotiation of the Offer Letter and APA, Vagaro allegedly terminated
22 Ms. Miller's employment for using the signature of Vagaro's Vice President of Finance without
23 permission to forge a document. *Id.* ¶ 3.
24 On or around December 8, 2022, Annie Miller commenced an action in Contra Costa
25 County Superior Court against Vagaro related to the termination of her employment. *See* ECF No.
26 10-1, Hubins Decl. Ex. 1. Ms. Miller alleged: 1) breach of contract; 2) implied covenant of good
27 faith and fair dealing; 3) retaliation/wrongful termination; 4) disability harassment; 5) negligent
28 infliction of emotional distress; 6) defamation; and 7) intentional interference with a contract or

1    prospective economic advantage.  *Id.*  In essence, Ms. Miller alleged that Vagaro fabricated the

2    forgery rationale to terminate her employment "for cause," but in actuality terminated her

3    employment to avoid paying her salary, prevent her equity shares from vesting, and in retaliation

4    for Ms. Miller's protest of disability harassment.  *Id.* ¶¶ 16, 17.

5        According to the parties, Vagaro answered the state court complaint on February 17, 2023.

6    *See* ECF Nos. 9 at 4; 16 at 7.  Plaintiffs allege that Vagaro deposed Ms. Miller in the state court

7    action on April 19, 2023.  ECF No. 16 at 7-8.  Vagaro alleges it learned for the first time at this

8    deposition that the Millers provided fraudulent financial documents to Plaintiffs in the

9    negotiations to purchase the salons and hire Ms. Miller.  *Id.*

10   **C.     Federal Court Litigation**

11       On May 25, 2023, Plaintiffs Vagaro and 77 West filed a complaint ("Complaint") against

12   Annie Miller and Gregory Miller alleging the following: 1) fraud (against all Defendants); and 2)

13   breach of contract (against Annie Miller).  The Millers filed this Motion to Dismiss pursuant to

14   Rule 12(b)(6) on June 28, 2023.  ECF No. 9.  On July 12, 2023, Defendants filed an Opposition

15   (ECF No. 16), and on July 19, 2023, the Millers filed a Reply (ECF No. 19).

16                                **III.   LEGAL STANDARD**

17       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

18   sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff

19   can prove no set of facts in support of his claim which would entitle him to relief."  *Cook v.*

20   *Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted).  Rule 8

21   provides that a complaint must contain a "short and plain statement of the claim showing that the

22   pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, a complaint must plead "enough facts

23   to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

24   570 (2007).  Plausibility does not mean probability, but it requires "more than a sheer possibility

25   that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).  A complaint

26   must therefore provide a defendant with "fair notice" of the claims against it and the grounds for

27   relief.  *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

28       In considering a motion to dismiss, the court accepts factual allegations in the complaint as

1    true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v.*
2    *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551
3    U.S. 89, 93-94 (2007). However, "the tenet that a court must accept a complaint's allegations as
4    true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere
5    conclusory statements." *Iqbal*, 556 U.S. at 678.

6        If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no
7    request to amend the pleading was made, unless it determines that the pleading could not possibly
8    be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en
9    banc) (citations and quotations omitted). A court "may exercise its discretion to deny leave to
10   amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to
11   cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . .,
12   [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th
13   Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV.   DISCUSSION

15       The Millers argue this federal court action must be dismissed because Plaintiffs' claims
16   should have been brought as compulsory counterclaims in the state court action commenced by
17   Ms. Miller. ECF No. 9 at 5-8. Plaintiffs argue they were not required to raise the present claims
18   in the state court action because the state and federal court claims do not arise out of the same
19   transaction or occurrence. ECF No. 16 at 9-11. Further, Plaintiffs argue they were not required to
20   raise the federal court claims in the state court action because Plaintiffs did not discover the
21   existence of the claims until after Vagaro filed its state court answer. *Id.* at 11-12.

22       "Federal courts will not permit an action to be maintained where the claims asserted should
23   have been brought as a compulsory counterclaim in an earlier action." *In re Crown Vantage, Inc.*,
24   421 F.3d 963, 973 n.7 (9th Cir. 2005). "The question whether the [Plaintiffs'] claims are
25   compulsory counterclaims which should have been pleaded in the earlier [Defendant] state court
26   action is a question of state law." *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th
27   Cir. 1987). Under the California Code of Civil Procedure § 426.30, "if a party against whom a
28   complaint has been filed and served fails to allege in a cross-complaint any related cause of action

which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded." Cal. Civ. Proc. Code § 426.30. "'Related cause of action' means a cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." Cal. Civ. Proc. Code § 426.10(c). "[T]he relatedness standard 'requires "not an absolute identity of factual backgrounds for the two claims, but only a logical relationship between them."'" *ZF Micro Devices, Inc. v. TAT Cap. Partners, Ltd.*, 5 Cal. App. 5th 69, 82 (2016), *as modified* (Nov. 30, 2016) (quoting *Currie Med. Specialties, Inc. v. Bowen*, 136 Cal. App. 3d 774, 777 (1982)). This "logical relationship" analysis is utilized under both federal and California law, and California state courts have looked to federal caselaw in interpreting § 426.30. *See, e.g.*, *Align Tech., Inc. v. Tran*, 179 Cal. App. 4th 949, 962 (2009) (assessing § 426.30 "based upon both case law construing California's compulsory cross-complaint statute and federal cases interpreting the analogous Rule 13(a).").

The purpose of the compulsory cross-complaint statute is to prevent "piecemeal litigation." *Carroll v. Imp. Motors, Inc.*, 33 Cal. App. 4th 1429, 1436 (1995). "[T]he law abhors a multiplicity of actions . . . the obvious intent of the Legislature . . . was to provide for the settlement, in a single action, of all conflicting claims between the parties arising out of the same transaction. Thus, a party cannot by negligence or design withhold issues and litigate them in successive actions; he may not split his demands or defenses; he may not submit his case in piecemeal fashion." *Align Tech.*, 179 Cal. App. 4th at 959 (cleaned up) (quoting *Flickinger v. Swedlow Eng'g Co.*, 45 Cal. 2d 388, 393 (1955)). "The statute is to be liberally construed to advance its purpose." *Heshejin v. Rostami*, 54 Cal. App. 5th 984, 993 (2020).

As an initial matter, Defendants attach to Jeff Hubins's declaration Ms. Miller's Contra Costa Superior Court complaint, and both parties refer to the document in their arguments. Hubins Decl. Ex. 1; *see, e.g.*, ECF Nos. 9 at 4; 16 at 5. "Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). The Court may take judicial notice of matters that are (1) generally

known within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (quoting *St. Louis Baptist Temple, Inc. v. FDIC,* 605 F.2d 1169, 1172 (10th Cir. 1979)). The Court considers the state court complaint highly relevant to the dispute herein, where the parties debate whether Plaintiffs' pending claims in this federal court action arise from the same series of transactions or occurrences as the claims brought by Ms. Miller in the state court action. While neither party requests the Court take judicial notice of the state court complaint, the Court may take judicial notice on its own. Fed. R. Evid. 201(c). The Court determines it appropriate to take judicial notice of this state court complaint, attached as Exhibit 1 to Mr. Hubins' declaration, containing Annie Miller's allegations, although not the truth of the allegations. *See Richter v. Oracle Am., Inc.*, No. 22-CV-04795-BLF, 2023 WL 1420722, at *3 (N.D. Cal. Jan. 31, 2023) (taking judicial notice of state court complaint); *cf. Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (finding district court make take judicial notice of the existence of court opinion but not the truth of the facts recited therein).

      Plaintiffs allege in their Complaint that they relied on the Millers' fraudulent representations in both entering into the APA and hiring Ms. Miller. ECF No. 1 ¶ 38. If not for the fraudulent representations, Vagaro alleges it would not have hired Ms. Miller and that the Millers acted with malice in "tricking" Vagaro into hiring her. *Id.* ¶¶ 39, 41, 42. Plaintiffs' allegations that they would never have entered into the APA or an employment relationship with Ms. Miller but for her fraudulent conduct are allegations pertaining to the contractual relationship between the parties, and therefore are allegations involving similar questions of fact and law as Ms. Miller's claims regarding violation of the employment contract. *Cf. Align Tech.*, 179 Cal. App. 4th at 962 ("The spirit and intent of Rule 13(a) requires that the entire contractual relationship be deemed to be included within the word 'transaction' in cases sounding in contract.") (quoting *King Bros. Prods. v. RKO Teleradio Pictures, Inc*., 208 F. Supp. 271, 275

1    (S.D.N.Y. 1962)). Further, Vagaro's allegation that it was fraudulently induced into entering into
2    an employment agreement with Ms. Miller would seem to operate as a defense to the state action
3    accusing Vagaro of violating said employment agreement. *See id.* at 962 ("[T]he matters Align
4    asserted here are those that one would anticipate an employer might raise—either as defenses, by
5    cross-complaint, or both—in responding to an employee's claim for wrongful termination such as
6    the one raised in the Tran cross-complaint."); *compare Automated Datatron, Inc. v. Woodcock*, 84
7    F.R.D. 408, 412 (D.D.C.1979) (analyzing action where employer sued former employee for
8    diversion of customers and employee counterclaimed for money owed under a stock agreement,
9    finding counterclaim compulsory where the propriety or impropriety of the employee's actions
10   were intertwined with the claims and counterclaims); *Currie*, 136 Cal. App. 3d at 777 (finding
11   counterclaims compulsory where the nature of the contractual relationship between the parties was
12   central to plaintiff's claim, noting that plaintiff's answer in the prior action argued estoppel based
13   on defendant's prior conduct, which was the same conduct as that upon which the current
14   complaint was based). As such, the Court finds such claims are logically related to Ms. Miller's
15   state court claims and therefore compulsory as it pertains to Ms. Miller.

16   As to Mr. Miller, the Court disagrees with Defendants' assertion that Plaintiffs should have
17   filed a cross-complaint against him in the state court action, as he was not a party in the state court
18   case. ECF No. 9 at 7-8. "Section 426.30 requires a defendant in a state court action in California
19   to raise any related causes of action which he has against the *plaintiff* in that action." *Maldonado*
20   *v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004) (emphasis in original). "Except as between plaintiffs
21   and defendants, there is no compulsory cross-complaint in California procedure. Rather, a cross-
22   complaint is permissive as between co-parties and between parties and nonparties." *Banerian v.*
23   *O'Malley*, 42 Cal. App. 3d 604, 612 (Cal. Ct. App. 1974) (citing Cal. Civ. Code § 426.30). Mr.
24   Miller is not a party in the state court action and thus Plaintiffs were not required to raise these
25   claims there.

26   Even though Plaintiffs' claims are logically related to Ms. Miller's claims, the Court finds
27   that Plaintiffs raise a valid argument as to whether the claims pending in this federal case existed
28   at the time of the answer in the state court case. "The related cause of action must be one that was

in existence at the time of service of the answer (§ 426.30, subd. (a)); otherwise, the failure to assert it in prior litigation is not a bar under the statute." *Heshejin*, 54 Cal. App. 5th at 993 (quoting *Align Tech.*, 179 Cal. App. 4th at 960). Plaintiffs here allege that they did not find out the factual underpinnings of their fraud and breach of contract claims, namely that the Millers provided fraudulent financial documents to Plaintiffs in the purchase of the salons, until deposing Ms. Miller in the state action two months after filing the state court answer. ECF No. 16 at 11-12. If Plaintiffs' allegations prove true, Plaintiffs' causes of actions would not have been in existence at the time of service of the answer in the state action. *See New England Country Foods, LLC v. VanLaw Food Prod., Inc.*, No. SACV2101060DOCADS, 2021 WL 6751898, at *4 (C.D. Cal. Nov. 23, 2021) (finding claim was not compulsory where plaintiff alleged it did not discover the facts underlying the current claims until discovery in the state action); *Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 690 (E.D. Cal. 2009) (applying Rule 13(a) and finding counterclaim had not matured at the time the answer was due in the other action where party was not aware of underlying facts and statute of limitations for the particular cause of action did not begin running until discovery). The Millers argue that the events occurred prior to the answer, but a cause of action based on fraud does not accrue under California law until the party discovers the facts constituting the fraud, and the claim for breach of contract is premised on the fraud and Ms. Miller's failure thereafter to indemnify 77 West. *See Krolikowski v. San Diego City Employees' Ret. Sys.*, 24 Cal. App. 5th 537, 561 (2018) ("[C]ause of action 'for relief on the ground of fraud or mistake' is 'not deemed to have accrued until the discovery, by the aggrieved party . . . of the facts constituting the fraud or mistake.'") (quoting Code Civ. Proc. § 338(d)). It would be illogical to determine Plaintiffs' causes of action existed prior to the statute of limitations beginning to run.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' Motion to Dismiss. The Court shall conduct a case management conference on August 31, 2023 at 10:00 a.m. by Zoom video conference. The webinar link and instructions are located at https://cand.uscourts.gov/judges/hixson-thomas-s-tsh/. This conference shall be attended by lead trial counsel.

By August 24, 2023, the parties shall file a joint case management statement containing the information in the Standing Order for All Judges in the Northern District of California, available at: http://cand.uscourts.gov/tshorders. The Joint Case Management Statement form may be obtained at: http://cand.uscourts.gov/civilforms. If the statement is e-filed, no chambers copy is required.

**IT IS SO ORDERED.**

Dated: July 27, 2023

_____
THOMAS S. HIXSON
United States Magistrate Judge